UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHERYL PANTANO, <br> on behalf of herself and all others similarly situated, <br> Plaintiffs, <br> v. <br> OCWEN LOAN SERVICING, LLC, <br> Defendant. | Case No. 19-cv-11178-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                               December 20, 2019

### I. Introduction

Plaintiff Cheryl Pantano ("Pantano") has filed this putative class action lawsuit against Defendant Ocwen Loan Servicing, LLC ("Ocwen") alleging violations of Mass. Gen. L. c. 93A, § 2 and 940 C.M.R. § 7.04 (Count I). D. 1-3. Pantano has moved to remand the matter to state court, D. 12, and Ocwen has moved for dismissal, D. 7. For the reasons stated below, the Court ALLOWS Plaintiffs' motion for remand, D. 12, and DENIES AS MOOT Ocwen's motion to dismiss, D. 7.

### II. Standard of Review

#### A. Motion for Remand

Upon the filing of a motion to remand, the Court must assess whether it "would have had original jurisdiction of the case had it been filed in [this] court" initially. BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d

824, 832 (1st Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)) (internal quotation mark omitted). When a plaintiff files an action in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper. Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999). The defendant "must . . . make a 'colorable' showing that a basis for federal jurisdiction exists." Id. (quoting BIW Deceived, 132 F.3d at 832). "Generally, [d]oubts about the propriety of removing an action should be resolved in favor of remand." Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 26 (D. Mass. 2005) (citation omitted).

B. **Motion to Dismiss**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III. Factual Background

#### A. <u>Motion to Dismiss</u>

The following facts are drawn from Pantano's complaint, D. 1-3, and are taken as true for the purposes of resolving Ocwen's motion to dismiss.

Pantano is a resident of Peabody, Massachusetts who took on debt to Ocwen in the form of a residential mortgage loan. D. 1-3 ¶¶ 6, 8-9. Ocwen is a corporation with its principal place of business in West Palm Beach, Florida. D. 1-3 ¶ 7. At all relevant times, Pantano's debt to Ocwen has been allegedly more than thirty days overdue. D. 1-3 ¶ 10.

In the last four years, Ocwen has repeatedly called Pantano's cellular telephone to attempt to collect the amount owed on the mortgage. From November 2017 through January 2018, Ocwen allegedly called Pantano daily and repeatedly more than two times within a given seven-day period. D. 1-3 ¶ 13. Pantano suffered anger, anxiety, emotional distress, fear and frustration as a result of the calls. D. 1-3 ¶ 15.

On January 16, 2019, Pantano sent Ocwen a letter via certified mail identifying her claim and describing Ocwen's unfair and deceptive acts, pursuant to Mass. Gen. L. c. 93A, § 9(3). D. 1-3 ¶ 18. On March 6, 2019, Ocwen responded to Pantano's letter which did not include a settlement offer. D. 1-3 ¶ 19.

#### B. <u>Motion to Remand</u>

As to Pantano's motion to remand, the Court also considers the following, additional facts. Plaintiffs seek to certify the following class:

> all consumers residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, received in excess of two telephone calls regarding a debt from Ocwen within a seven-day period to their residence, cellular telephone, or other provided telephone number.

D. 1-3 ¶ 21. Pantano alleges that there are thousands of Massachusetts consumers who are members of the proposed class. D. 1-3 ¶ 24. In the original state court civil cover sheet, Pantano sought damages in the amount "greater than $25,001.00 on behalf of Plaintiff & the class." D. 1 at ¶¶ 6-7; D. 6 at 13.

## IV. Procedural History

Pantano instituted this action in Essex Superior Court on April 1, 2019, D. 1-3, and Ocwen removed the matter to this Court, D. 1, on May 24, 2019. Pantano has now moved for remand to state court, D. 12, and Ocwen has moved for dismissal, D. 7. The Court heard the parties on the pending motions and took the matters under advisement. D. 23.

## V. Discussion

### A. Motion for Remand

Ocwen removed this case pursuant to 28 U.S.C. §§ 1441 claiming diversity jurisdiction, which requires complete diversity between the parties and an amount in controversy greater than $75,000, 28 U.S.C. § 1332. D. 1 at 1. The parties do not dispute that there is complete diversity of citizenship between the parties. A defendant removing a case to federal court must also "show a 'reasonable probability'" that the amount in controversy meets or exceeds the jurisdictional minimum. Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). The "reasonable probability" standard applies to cases wherein a plaintiff seeks remand based on the amount in controversy not meeting the jurisdictional minimum. Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 233 (D. Mass. 2010). The reasonable probability standard is "particularly applicable where, as here, a plaintiff's complaint does not contain specific damage allegations." Reynolds v. World Courier Ground, Inc., 272 F.R.D. 284, 286 (D. Mass. 2011).

Pantano makes two arguments with respect to the amount in controversy: 1) the $25,001 figure listed on the state court civil cover sheet took into account class-wide damages and thus is not a meaningful figure for analysis of the amount in controversy; and 2) the fact that the initial action was filed in Superior Court, which has a jurisdictional requirement of at least $25,000 in controversy, is not dispositive of the amount in controversy for purposes of federal jurisdiction. D. 13 at 5-6. Ocwen argues that there is a reasonable probability the $75,000 amount in controversy amount for federal jurisdiction has been met or exceeded because Pantano listed $25,001 as the amount of damages sought and, because Mass. Gen. L. c. 93A allows for trebled damages,[1] the amount in controversy is necessarily greater than $75,000.

The Court first looks to Pantano's damages allegations to determine the amount in controversy. Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995). Here, there are no damage allegations in the complaint itself, D. 1-3, but the state court civil cover sheet claimed damages of "[g]reater than $25,001.00 on behalf of Plaintiff & the class." D. 6 at 13. If the $25,001 amount encompasses the entirety of Pantano's damages, then the jurisdictional amount in controversy floor of $75,000 is not met. See, e.g., Huston v. FLS Language Centres, 18 F. Supp. 3d 17, 22 (D. Mass. 2014) (noting that claimed damages of $250,000 on state court civil

---

[1] Pantano asserts her claims under Mass. Gen. L. c. 93A and 940 C.M.R. § 7.04. The regulation provides, in relevant part, that "[i]t shall constitute an unfair or deceptive act or practice for a creditor to contact a debtor in any of the following ways: . . . Initiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period . . . ." 940 C.M.R. § 7.04(1)(f). Chapter 93A provides for damages stemming from "unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. L. c. 93A, § 2(a), as follows: "[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty–five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated [Chapter 93A]." Id. § 9(3).

5

cover sheet "is not sufficient to establish federal jurisdiction" when the claimed damages "represented the amount in controversy plaintiff expected the entire class to recover"). Aside from the plain language used by Pantano on the civil cover sheet, a hypothetical damages calculation also supports the notion that the $25,001 represents class-wide rather than personal damages. As explained above, *supra* note 1, Mass. Gen. L. c. 93A, § 2(a) provides statutory damages of either "actual damages" or "twenty-five dollars, whichever is greater." Pantano has not specified whether she seeks a per-week award or a per-violation award, but either way the alleged damages do not have a reasonable probability of exceeding $25,000 for Pantano as opposed to classwide. Pantano alleges that from November 2017 through January 2018, a period of at most fourteen weeks, Ocwen called her daily. Assuming a per violation damages award, and assuming that each call beyond the first two calls in a given seven-day period constitutes a violation, the maximum damages award for a week is $125 (five violative daily calls multiplied by $25) and the total damages would be $1,750 ($125 multiplied by fourteen weeks). Even assuming Ocwen called Pantano twice a day during the relevant time period, potential damages would be only $4,200 (two violative calls every day for six days a week multiplied by $25 over fourteen weeks). Even if that amount were trebled under Chapter 93A, the potential damages, $12,600, would not meet the $75,000 jurisdictional threshold for an individual plaintiff.

Ocwen makes two additional arguments with the potential to increase the reasonably probable amount in controversy: 1) Pantano seeks recovery for emotional distress, which "can result in substantial awards;" and 2) Pantano seeks attorneys' fees that, alone, could total $75,000.[2]

---

[2] A Court may consider potential attorneys' fees as part of the amount-in-controversy calculation when "a statute mandates or allows the payment of such fees." Dep't of Recreation and Sports of Puerto Rico v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991). Chapter 93A, § 9(4) provides, in relevant part: "[i]f the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided

D. 19 at 8-9. In support of these additional amounts, Ocwen cites cases in support of large emotional distress damages and two cases in which the same plaintiff's counsel received attorneys' fees. Id. These emotional distress cases where plaintiffs were awarded substantial emotional distress awards do not support a reasonable probability that the amount in controversy, even including a trebled emotional distress award, would necessarily meet or exceed $75,000 where such awards are fact-dependent and dissimilar from the instant case even where Pantano invokes emotional distress in her complaint. See Goodin v. Bank of America., N.A., 114 F. Supp. 3d 1197, 1213 (M.D. Fla. 2015) (awarding $50,000 in emotional distress damages following plaintiffs' repeated attempts to pay their mortgage and Bank of America's repeated failure to take appropriate steps to receive payments and, ultimately, illegally attempting to foreclose on plaintiffs' home); Haddad v. Gonzalez, 576 N.E.2d 658 (Mass. 1991) (awarding $18,000 in emotional distress damages where landlord maintained plaintiff's apartment in "deplorable" condition, sexually harassed the plaintiff, threatened her from seeking relief in court and sought to evict her in retaliation); Thomas O'Connor Constructors, Inc. v. Massachusetts Comm'n Against Discrimination, 72 Mass. App. Ct. 549, 550 (2008) (awarding $50,000 for emotional distress damages resulting from repeated instances of racist language directed at plaintiff by his work supervisor).

The same analysis holds for Ocwen's attorneys' fees argument. Ocwen cites cases involving the same plaintiffs' counsel as here, one in which counsel sought and received $70,000 in attorneys' fees in a single-plaintiff case, Armata v. Target Corp., No. 1579CV00493, 2018 WL 4940331 (Mass. Super. Ct. Aug. 13, 2018), D. 19-4, and another in which counsel received

---

for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action."

attorneys' fees in excess of $200,000 in a ten-plaintiff case, Chou, et al. v. Subaru of America, Inc., No. 16-cv-10610-WGY (D. Mass. filed Mar. 29, 2016). For the purposes of determining the amount in controversy, "attorney's fees in a class action may not be aggregated and attributed only to the named plaintiff but rather must be prorated across the entire class." Radlo v. Rhone-Poulenc, S.A., 241 F. Supp. 2d 61, 64 (D. Mass. 2002). The Chou case cited by Ocwen, as one example, supports an estimated attorneys' fees award of approximately $20,000 per plaintiff. That leaves Armata and its damages, fees and costs stipulation letter, D. 19-4, to establish a reasonable probability that attorneys' fees would bring the hypothetical total of $12,600 in damages ($4,200 in damages assuming twice-daily calls to Pantano and a presumed trebling pursuant to Chapter 93A) and an unspecified amount in emotional distress damages, potentially trebled, above the $75,000 threshold. Given the record that the Court has before it concerning attorneys' fees, and that one of the two cases Ocwen cites to carry their burden supports an attorneys' fees calculation of approximately $20,000, the Court is unable to find a reasonable probability that the total amount in controversy, taking into account the potential for trebled damages, emotional distress damages and attorneys' fees, meets or exceeds the $75,000 jurisdictional floor. This conclusion is further supported by the fact that "the federal courts have a particular responsibility to police the border of federal jurisdiction, because the Constitution limits the jurisdiction of federal courts and Congress has further narrowed our jurisdiction by periodically increasing the amount-in-controversy minimum for diversity cases." Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 233 (D. Mass. 2010) (citing Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001)) (internal citations and quotation marks omitted). For these reasons, Ocwen has not shown a reasonable probability that the amount-in-controversy exceeds the $75,000 amount under 28 U.S.C. §1332(a).

8

To extent that Ocwen has now belatedly invoked 28 U.S.C. § 1332(d)(2) to avoid remand, the Court notes the following. The Court inquired at the motion hearing, D. 23, about the application of the Class Action Fairness Act ("CAFA") and since that hearing, Ocwen has filed a Supplemental Notice of Removal relying upon, in the alternative to diversity jurisdiction under § 1332(a), CAFA, for removal. D. 25 at 7-8. Under 28 U.S.C. § 1322(d)(2), Ocwen has the burden of showing, among other things, that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action [meeting certain criteria as to diversity between the parties]." Even assuming the other criteria have been met, Ocwen has failed to show, even on the supplemented record, that the amount in controversy as to the proposed class action exceeds $5,000,000. In its calculations, it assumes that 12,000 consumers would be in the class, D. 25 at 9 & n.13; see D. 25-2 at 3 (Trees affidavit attesting that "potentially as many as 12,000 loans met parameters of having been serviced by Ocwen in Massachusetts since April 1, 2015, involved customers who received more than two phones calls, not requested by the consumer, in any sliding seven-day window), but does not show a reasonable probability that each class member would each receive $400, D. 25 at n.13, or even closer to $353, D. 29 at 6 (if you accept Ocwen's contention regarding a likely attorneys' fee award for class counsel, D. 25 at 9). Accordingly, on the current record, to the extent that Ocwen is now seeking to invoke jurisdiction under CAFA to avoid remand, D. 25, it has failed to meet its burden of same at this time.

For all of these reasons, the Court ALLOWS the motion to remand.

**B.** **Motion to Dismiss**

Given the Court's ruling on the motion to remand, the motion to dismiss, D. 7, is denied as moot. See, e.g., Kirkman v. Explorica, Inc., 681 F. Supp. 2d 104, 105 (D. Mass. 2009); Quincy

Mut. Fire Ins. Co. v. Vivint Solar Developer, LLC, No. 17-CV-12343-ADB, 2018 WL 3974820, at *5 n.6 (D. Mass. Aug. 20, 2018).

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS Pantano's motion for remand, D. 12, and DENIES AS MOOT Ocwen's motion to dismiss, D. 7.

**So Ordered.**

                                      /s/ Denise J. Casper
                                      United States District Judge